1  ROBERT A. WEIKERT, CA BAR NO. 121146
   PATRICK M. RYAN, CA BAR NO. 203215
2  CHAD DEVEAUX, CA BAR NO. 215482
   EVA CHAN, CA BAR NO. 233289
3  THELEN REID & PRIEST LLP
   101 Second Street, Suite 1800
4  San Francisco, California 94105
   Telephone:    (415) 371-1200
5  Facsimile:    (415) 371-1211

6  Attorneys for Defendant ROBERT KEMP

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11
   SWORDS TO PLOWSHARES,              Case No.: 3:05-CV-01661-MJJ
12
                    Plaintiff,        DEFENDANT ROBERT KEMP'S
13                                    OPPOSITION TO PLAINTIFF'S
        v.                           MOTION TO REMAND
14
   ROBERT KEMP,                       Date:         June 28, 2005
15                                    Time:         9:30 a.m.
                    Defendant.        Place:        Courtroom 11, 19th Floor
16                                    Judge:        Hon. Martin J. Jenkins

17                                    Comp. Filed:     April 1, 2005
                                     Comp. Removed:   April 21, 2005
18                                    Trial Date:      TBA

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ARGUMENTS ......................................................................... 2

III.    LANDLORD'S MOTION TO REMAND SHOULD BE DENIED.......................... 4

    A.      FEDERAL LAW "EXCLUSIVELY" GOVERNS CIVIL DISPUTES
        ARISING ON THE PRESIDIO ...................................................................... 4

        1.      Federal Law "Exclusively" Governs Federal Enclaves ......................... 4

        2.      "Federalized" State Law Governs "Laws Affecting the Possession, Use
            and Transfer of Property" in Federal Enclaves ..................................... 4

    B.      THE PRESIDIO IS A FEDERAL ENCLAVE ................................................ 6

        1.      The Presidio Became a Federal Enclave in 1897.................................. 6

        2.      The Presidio Remains a Federal Enclave ............................................. 7

    C.      CALIFORNIA COURTS LACK JURISDICTION TO ENFORCE AN
        EVICTION ORDER ...................................................................................... 14

    D.      ANY ACTIONS SEEKING EVICTION FROM FEDERALLY SUBSIDIZED
        HOUSING "ARISE UNDER" FEDERAL LAW ............................................ 16

IV.     CONCLUSION ................................................................................................. 18

1

# TABLE OF AUTHORITIES

2
**Page(s)**

## UNITED STATES SUPREME COURT DECISIONS

3

4

*American Ins. Co. v. Canter,*
    26 U.S. (1 Pet.) 511 (1828) ................................................................. 5

5

*American Land Co. v. Zeiss,*
    219 U.S. 47 (1911) ......................................................................... 15

6

7

*Chicago, R. I. & P. R. Co. v. McGlinn,*
    114 U.S. 542 (1885) ................................................................. 5, 6, 18

8

*Collins v. Yosemite Park & Curry Co.,*
    304 U.S. 518 (1938) ......................................................................... 8

9

10

*Fall v. Eastin,*
    215 U.S. 1 (1909) .......................................................................... 15

11

*Fort Leavenworth R.R. Co. v. Lowe,*
    114 U.S. 525 (1885) ......................................................................... 4

12

13

*Franchise Tax Bd. v. Construction Laborers Vacation Trust,*
    463 U.S. 1 (1983) ..................................................................... 16, 17

14

*Geis v. Board of Educ.,*
    774 F.2d 575 (3d Cir. 1985) ............................................................... 18

15

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ....................................................................... 15

16

17

*Humble Pipe Line Co. v. Waggonner,*
    376 U.S. 369 (1964) ....................................................................... 10

18

*James Stewart & Co. v. Sadrakula,*
    309 U.S. 94 (1940) ............................................................ 4, 5, 6,7, 18

19

20

*Lebron v. National R.R. Passenger Corp.,*
    513 U.S. 374 (1995) ....................................................................... 14

21

*Merrell Dow Pharmaceuticals, Inc. v. Thompson,*
    478 U.S. 804 (1986) ....................................................................... 18

22

23

*In re Neagle,*
    135 U.S. 1 (1890) .......................................................................... 14

24

*Palmer v. Barrett,*
    162 U.S. 399 (1896) ........................................................................ 6

25

*Paul v. United States,*
    371 U.S. 245 (1963) ........................................................................ 9

26

27

*S.R.A., Inc. v. State of Minnesota,*
    327 U.S. 558 (1946) ..................................................................... 9, 10

28

*Standard Oil Co. v. California,*
   291 U.S. 242 (1934) ........................................................................... 4, 6, 8

*Surplus Trading Co. v. Cook,*
   281 U.S. 647 (1930) ................................................................................ 4

*United States v. Smith,*
   499 U.S. 160 (1991) .............................................................................. 12

*United States v. Vonn,*
   535 U.S. 55 (2002) ............................................................................... 12

**OTHER FEDERAL COURT DECISIONS**

*Board of Supervisors v. United States,*
   408 F. Supp. 556 (E.D. Va. 1976) ......................................................... 5

*Las Casitas Associates v. Ramirez,*
   1994 WL. 618491 (N.D. Cal. Oct. 25, 1994) ...................................... 17

*Macomber v. Bose,*
   401 F.2d 545 (9th Cir. 1968) ...................................................... 6, 17, 19

*Mater v. Holley,*
   200 F.2d 123 (5th Cir. 1952) .................................................................. 5

*Neagle v. Brooks,*
   373 F.2d 40 (10th Cir. 1967) ............................................................... 15

*Rahl v. Bande,*
   316 B.R. 127 (S.D.N.Y. bankr. 2004) .................................................. 17

*Staffan v. Zeust,*
   10 App. D.C. 260 (D.C. 1897) ............................................................. 15

*Students of California School for the Blind v. Honig,*
   736 F.2d 538 (9th Cir. 1984) .......................................................... 17, 18

*Swords to Plowshares v. Smith,*
   294 F. Supp. 2d 1067 (N.D. Cal. 2002) ..................................... 1, 2, 14, 16, 17

*United States v. Goings,*
   504 F.2d 809 (8th Cir. 1974) ................................................................. 9

*Willis v. Craig,*
   555 F.2d 724 (9th Cir. 1977) ................................................................. 6

**CALIFORNIA DECISIONS**

*Consolidated Milk Producers v. Parker,*
   19 Cal.2d 815 (1942) (RJN, Ex. "M") ............................................. 4, 6, 9

**UNITED STATES CONSTITUTION**

U.S. Const., art. I,§ 8, cl. 17 ("Enclave Clause") .................................. 8, 10

# FEDERAL STATUTES

5 U.S.C.
§ 105 ........................................................................................................... 11

16 U.S.C.
§ 1 ........................................................................................................ 8, 10
§ 460bb ................................................................................................. 8, 10
§ 460bb-2 .................................................................................................... 8

20 U.S.C.
§ 1401 ......................................................................................................... 17

28 U.S.C.
§ 1331 ................................................................................................. 5, 7, 18

42 U.S.C.
§ 1437 ......................................................................................................... 16

Presidio of San Francisco Act of 1996, 115 Stat. 1328
§ 101 ...................................................................................................... 8, 10
§ 103 .................................................................................................... 11, 13
§ 104 .................................................................................................... 10, 14

# CODE OF FEDERAL REGULATIONS

24 C.F.R.
§ 247.3 ............................................................................................... 7, 16, 17
§ 247.4 ....................................................................................................... 16
§ 247.6 ....................................................................................................... 16

36 C.F.R.
§ 1002.15 .................................................................................................... 11
§ 1002.36 .................................................................................................... 11
§ 1002.61 .................................................................................................... 11
§ 1004.2 ...................................................................................................... 11
§ 1004.14 .................................................................................................... 11
§ 1004.23 .................................................................................................... 11
§ 1004.31 .................................................................................................... 11
§ 1005.3 ...................................................................................................... 11
§ 1005.5 ...................................................................................................... 11
§ 1005.8 ...................................................................................................... 11
Chapter X .................................................................................................... 11

# CALIFORNIA STATUTES

Act of March 2, 1987, St. Cal. 1897, p 51 (RJN, Ex. "B") ....................................... 6, 9

Cal. Code Civ. Proc.
§ 1161 (2001) (RJN, Ex. "N") ...................................................................................... 6

Cal. Code Civ. Proc.
§ 1161 (1872) & (1876) (RJN, Ex. "C") ................................................................. 6, 17

Cal. Gov. Code
§ 110 (RJN, Ex. "O") ................................................................................................. 8
§ 113 (RJN, Ex. "P") ............................................................................................. 9, 13

**MISCELLANEOUS**

Wright & Miller, Federal Practice & Proc., Civ.2d (1984) .......................................... 17

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3    This is not a new dispute — to the Parties, the attorneys or the Court.  As Yogi Bera might

4    say, this case is "like *deja vu*, all over again."  Three years ago, Swords to Plowshares

5    ("Landlord") brought nearly identical actions against Mr. Kemp and another tenant before this

6    Court, asserting federal-question jurisdiction.  Jan. 30, 2002 Complaint at p. 2, ¶ "I" ( hereinafter

7    "2002 Comp."), attached to accompanying Request for Judicial Notice as Ex. "A" (hereinafter

8    "RJN").  That litigation resulted in multiple dismissals, and a published opinion.  *Swords to*

9    *Plowshares v. Smith*, 294 F. Supp.2d 1067, 1070-71 (N.D. Cal. 2002) (dismissing Presidio

10    unlawful-detainer action for failure to comply with requirements of federal eviction law and Due

11    Process).

12    The 2002 litigation also coincided with the formation of a Northern District Local Rules

13    Sub-Committee considering special local rules providing for expedited federal unlawful-detainer

14    procedures (hereinafter "Committee").  The Committee was formed at the behest of the Presidio

15    Trust in express recognition of the fact that eviction actions on the Presidio are *exclusively*

16    governed by federal law.  *See* RJN, Ex. "D" through Ex. "K".  The Presidio Trust, the

17    United States Attorney for the Northern District of California, and Mr. Kemp's attorneys[1] all

18    submitted briefs to the Committee.  *See id.*

19    The Presidio Trust and the United States Attorneys' Office both submitted letters and briefs

20    to the Committee arguing not only that the federal courts have jurisdiction over Presidio unlawful-

21    detainer actions — but that such federal jurisdiction is exclusive and state courts are

22    constitutionally barred from hearing such cases.  RJN, Ex. "D," at p. 2, and Ex. "K," at pp. 6-8.

23    Landlord concurred in this opinion, admitting in its 2002 complaints that the property is exempt

24    from state and local housing laws because it "is on the federally owned land of the Presidio Trust."

25    2002 Comp. ¶20, RJN, Ex. "A".

26    _____

27    [1]    Mr. Kemp's attorneys prepared and submitted a brief to the Committee in their private
capacities.  *See* RJN, Ex. "I".  The brief and the arguments expressed therein were not made on

28    behalf of Mr. Kemp or any other client.

1    Now, in apparent recognition of the fact that this Court's 2002 decision in *Swords to*

2    *Plowshares v. Smith* is fatal to its present action, Landlord asserts that federal jurisdiction is

3    lacking because the Presidio Trust — *an administrative arm of the Department of the Interior* —

4    is, it argues, a "private California part[y]" and no "federal interest[s]" are affected.  Remand

5    Motion at 12:11-14.  These arguments are meritless.

6    **II.    SUMMARY OF ARGUMENTS**

7    Federal question jurisdiction exists here for numerous reasons:

8    First, as the Supreme Courts of the United States and California have both expressly held,

9    the Presidio is a federal enclave subject to exclusive federal jurisdiction.  As such, federal law is

10   the sole law applicable on the Presidio.  It is a well settled tenet of constitutional law that where, as

11   here, the Federal Government has assumed exclusive jurisdiction over a federal enclave, state laws

12   "affecting the possession, use and transfer of property" in effect at the time of cession "continue in

13   force as *federal* laws."  Because these "assimilated laws" are "federal" in character their

14   application forms the basis for federal jurisdiction.  Thus, to the extent that they have not been

15   displaced by subsequently enacted federal law, the relevant California "laws affecting the

16   possession, use and transfer of property" in effect when California ceded the Presidio to the

17   Federal Government apply to this action.  Because these "assimilated" laws, "arise under federal

18   law" they "are properly the subject of federal jurisdiction."

19   Second, Landlord's assertion that complete or partial jurisdiction over the Presidio has

20   "reverted" to California because the Presidio is no longer an "active military base" is wholly

21   without merit.  The Supreme Court has expressly held that Congress' power to exercise exclusive

22   jurisdiction over federal enclaves is augmented by the Constitution's eminent domain provision;

23   thus, federal enclaves are not limited to military bases.  Moreover, the decisions Landlord cites for

24   its "reversion" argument are all inapposite because they only apply to cases where the Federal

25   Government has "abandoned" former federal enclaves and ceased all operations there.  As the

26   Supreme Court has explained, exclusive federal jurisdiction exists so long as the United States

27   "continues to hold all the land subject to its primary jurisdiction and control."  Even a cursory

28   examination of the web of statutes and regulations governing the Presidio plainly reveals that the

Federal Government "continues to hold" the entire Presidio "subject to its primary jurisdiction and control."

Third, even if the Constitution permitted "reversion" in this case, the Supreme Court has repeatedly held that such reversion is limited to the terms of the state cession statutes. Here, California's cession laws expressly state that "retrocession of jurisdiction" over federal enclaves, whether such retrocession "return[s] all jurisdiction to the state" or "provide[s] for concurrent jurisdiction," must be requested by the Federal Government "in writing." Further, such retrocession must be approved by the California State Lands Commission following a full public hearing "determin[ing] whether acceptance of the retrocession is in the best interest of the state." Here, retrocession of the Presidio has been neither requested by the Federal Government, nor approved by the Lands Commission. Thus, the Federal Government continues to exercise "exclusive jurisdiction" over the Presidio.

Fourth, federal law dictates that the National Park Police are exclusively responsible for law enforcement on the Presidio. For this reason, the San Francisco County Sheriff lacks the jurisdiction to enforce any eviction orders on the Presidio. Accordingly, California's courts have no means of enforcing any judgment in Presidio unlawful-detainer cases. Thus, Landlord's argument actually asserts that *exclusive* jurisdiction over Presidio evictions resides in courts which have no jurisdiction to enforce eviction orders on the Presidio. Thus, at best, if Landlord obtained an eviction order in state court, Landlord would have to return to this Court to enforce the order. It defies logic to assert that this Court lacks jurisdiction to hear this action *now*, but will possess jurisdiction to enforce a judgment in this action *later*.

Finally, evictions from federally subsidized housing are expressly governed by regulations promulgated by the federal Department of Housing and Urban Development. Because this federal law unequivocally preempts state law in federal housing cases, any complaint seeking to evict a tenant from federally subsidized housing "necessarily arises under federal law" and is subject to removal to federal court.

III.     **LANDLORD'S MOTION TO REMAND SHOULD BE DENIED**

A.     **FEDERAL LAW "EXCLUSIVELY" GOVERNS CIVIL DISPUTES ARISING ON THE PRESIDIO**

    1.     Federal Law "Exclusively" Governs Federal Enclaves

As the Supreme Court has repeatedly explained, federal jurisdiction over federal enclaves is "exclusive of all state authority." *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 532 (1885). "It long has been settled that where lands … are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes … to the United States, thereby making the [federal] jurisdiction … the *sole jurisdiction*." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 657 (1930) (emphasis added). The Presidio is no different. As the United States Supreme Court expressly held, "by the Act of 1897 California surrendered every possible claim of right to exercise legislative authority within the Presidio — put that area beyond the field of operation of her laws." *Standard Oil Co. v. California*, 291 U.S. 242 , 244 (1934). The California Supreme Court agreed with this interpretation: "California ceded exclusive jurisdiction over the Presidio to the United States ... reserving only the right to execute civil and criminal processes therein. The area thus became a federal territory removed from the jurisdiction of the state." *Consolidated Milk Producers v. Parker*, 19 Cal.2d 815, 816 (1942) (citations omitted).

    2.     "Federalized" State Law Governs "Laws Affecting the Possession, Use and Transfer of Property" in Federal Enclaves

It is similarly well established that when the Federal Government acquires state land to establish federal enclaves, the former state law — as it existed at the time the land was ceded — remains in effect unless the Federal Government expressly provides otherwise:

> [When the Federal Government acquires state land] [t]he Constitution does not command that every vestige of the laws of the former [state's] sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those *rules existing at the time of the surrender of sovereignty* which govern the rights of the occupants of the territory transferred. This assures that no area however small will be left without a developed legal system for private rights.

1    *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99-100 (1940) (emphasis added).  This

2    constitutional principle is derived from an ancient rule of international law.  *See e.g.*, *American*

3    *Ins. Co. v. Canter*, 26 U.S. (1 Pet.) 511, 544 (1828) (Marshall, C. J.) (finding that Spanish law

4    remained in effect in newly acquired Florida Territory until changed by Congress).

5         More specifically here, as the Supreme Court has explained, this rule applies to property

6    disputes: "[W]ith respect to … ***laws affecting the possession, use and transfer of property*** … the

7    rule is general, that a change of government leaves them in force until, by direct action of the new

8    government, they are altered or repealed."  *Chicago, R. I. & P. R. Co. v. McGlinn*, 114 U.S. 542 ,

9    546-47 (1885) (emphasis added).

10        Further, despite its genesis, this assimilated "state law" is distinctly *federal* in nature.

11   "Upon the transfer from a State to the United States of exclusive jurisdiction of a site … the state

12   laws in effect at the time continue in force as ***federal laws***."  *James Stewart & Co.*, 309 U.S. at 96

13   (Syllabus ¶2) (emphasis added) (finding that New York Labor Law remained in effect "as federal

14   law" on lands ceded to the United States).  As one court explained:

15
16        *[T]he applicable state law[s] "lose their character as law of the*
        *state and become laws of the Union"*….  This "federalized" state
        law is needed in such instances to prevent the formation of a hiatus
17        in the legal system of the federal enclave.

18   *Board of Supervisors v. United States*, 408 F. Supp. 556, 563-64 (E.D. Va. 1976) (emphasis

19   added); *accord James Stewart & Co.*, 309 U.S. at 96.  Thus, upon federal acquisition of the

20   property, Congress is deemed to have assimilated *existing* state statutes and rules by operation of

21   law.

22        Because the assimilated law takes on a federal character, its application establishes the

23   basis for federal question jurisdiction: "It would be incongruous to hold that although the United

24   States has exclusive sovereignty in the area … involved, [its own federal courts] are without power

25   [under 28 U.S.C. section 1331] to adjudicate controversies arising there, but must relegate the

26   parties to the [state courts] for relief."  *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1952).  The

27   Ninth Circuit has expressly adopted this rule:

28

1    By … cession and acceptance [over a federal enclave], federal
     authority [becomes] the only authority operating within the ceded
2    area.      State law theretofore applicable within the area was
     assimilated as federal law, [Citation], to remain in effect until
3    changed by Congress.   ***Rights arising under such assimilated law,
     arise under federal law and are properly the subject of federal
4    jurisdiction***.

5    *Macomber v. Bose*, 401 F.2d 545, 456 (9th Cir. 1968) (citations omitted) (emphasis added);

6    *accord Willis v. Craig*, 555 F.2d 724, 726 n.4 (9th Cir. 1977).

7          Thus, state "laws affecting the possession, use and transfer of property" (*McGlinn*, 114

8    U.S. at 546-47) in effect at the time of cession would "continue in force as federal laws" (*James*

9    *Stewart & Co.*, 309 U.S. at 96).  Because such "such assimilated law[s], arise under federal law"

10   application of these property laws "are properly the subject of federal jurisdiction."  *Macomber*,

11   401 F.2d at 456.  And so it is here.

12   **B.        THE PRESIDIO IS A FEDERAL ENCLAVE**

13          1.        <u>The Presidio Became a Federal Enclave in 1897</u>

14         The California Legislature "cede[d] to the United States of America exclusive jurisdiction"

15   over the Presidio by statute in 1897.  Act of March 2, 1897, St. Cal. 1897, p. 51, RJN, Ex. "B";

16   *accord Standard Oil Co.*, 291 U.S. at 244; *Consolidated Milk Producers*, 19 Cal.2d at 816.

17   Accordingly, to the extent that it has not been displaced by subsequently enacted federal law, the

18   relevant California "laws affecting the possession, use and transfer of property" in effect in 1897

19   apply to this action.  But because "such assimilated law[s], ***arise under*** federal law" they "are

20   properly the subject of federal jurisdiction."  *Macomber*, 401 F.2d at 456 (emphasis added).

21         The California unlawful-detainer statute was originally enacted in 1872, and its substantive

22   components have remained unchanged in most material respects with one important exception.

23   The present version of the statute allows a landlord to initiate proceedings against a tenant

24   committing a nuisance.  Cal. Code Civ. Proc. § 1161 (2001).  The statute, as it read in 1897, had

25   no comparable provision.  Cal. Code Civ. Proc. § 1161 (1872) & (1876), RJN, Ex. "C" [2].

26   _____
     [2]     In 1897 the substantive provisions of California's unlawful-detainer statute were codified
27   in twin sections, one enacted in 1872 and supplemented by amendment on March 13, 1876.  Both
     are numbered as "Section 1161."   The annotations to the statute indicate that the Legislature
28   replaced the twin sections with a single "Section 1161" in 1915.  RJN, Ex. "C".

1    The Supreme Court has indicated that when an assimilated state regulatory scheme has

2    "evolve[d]" some procedural modifications made by the state law after cession may sometimes be

3    read into the assimilated law.  *Paul v. United States*, 371 U.S. 245, 269 (1963) (considering the

4    possibility that modifications to state milk regulations may be part of assimilated federal law).  But

5    *substantive* statutory changes are not assimilated into federal law because Congress cannot be

6    deemed to have enacted a substantive provision that did not exist at the time of cession: "[F]uture

7    statutes of the state are not a part of the body of laws in the ceded area … [because] Congressional

8    action is necessary to keep it current."  *James Stewart & Co.*, 309 U.S. at 100.  By adding a ground

9    for eviction that did not exist in the prior statutes, the California Legislature created a wholly new

10   eviction cause of action which did not exist in 1897.  Thus, the subsequently enacted "nuisance"

11   statute cannot be read into the assimilated law absent subsequent Congressional action "to keep it

12   current."

13   While Landlord's Complaint is premised upon nuisance, the absence of a "nuisance

14   provision" is not material to its ability to bring the claim in general because the grounds for

15   eviction from federally subsidized housing — including nuisance — are provided for by federal

16   law, not state law.  24 C.F.R. § 247.3(c)(2)(ii); *see infra* Section D.  But the fact that Landlord's

17   sole ground for eviction necessarily depends upon a federal regulation further demonstrates that

18   this action "arises under" unadulterated federal law.

19       2.    The Presidio Remains a Federal Enclave

20   In its 2002 suit against Mr. Kemp, Landlord asserted to this very Court that federal

21   question jurisdiction existed under 28 U.S.C. section 1331.  2002 Comp. at p. 2, ¶ "I", RJN, Ex.

22   "A".  Landlord now asserts that this Court lacks such jurisdiction.  Landlord now claims, among

23   other things, that the Presidio is not an exclusive federal enclave because it is no longer "being

24   used by the Army as an active military base" (Remand Motion at p. 7:1-2) and because "[t]he

25   administrative jurisdiction" of the Presidio "has been transferred to the Presidio Trust."  Remand

26   Motion at 8:4-5.  Landlord's arguments lack merit for multiple reasons.

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1

a.     Exclusive Federal Enclave Jurisdiction Is Not Limited to "Active Military Bases"

2

3      In recognition of the fact that certain military bases were no longer needed, Congress

4  provided that Defense Department property that was in "excess to its needs … shall be transferred

5  to the jurisdiction of the Secretary [of the Interior]…."  16 U.S.C. § 460bb-2(f).  In furtherance of

6  this policy decision, Congress dictated that "the Presidio, in its entirety, is a part of the Golden

7  Gate National Recreation Area."  Presidio of San Francisco Act of 1996, 115 Stat. 1328 § 101(4)

8  (hereinafter "Presidio Act").  The "Golden Gate National Recreation Area" falls under the

9  jurisdiction of the National Park Service.  16 U.S.C. § 460bb.  The National Park Service, in turn,

10 is a subdivision of the Department of the Interior.  16 U.S.C. § 1.

11     Landlord argues that the "exclusive jurisdiction" conveyed by the Enclave Clause[3]

12 terminates if the Federal Government later uses the property for a purpose not enumerated in that

13 Clause.  Remand Motion at pp 8-10.  This is wrong.  Congress is empowered to establish federal

14 enclaves for purposes other than "military bases" — including the National Park Service.  *Collins*

15 *v. Yosemite Park & Curry Co.*, 304 U.S. 518, 528-530 (1938).  As the *Collins* Court explained,

16 Congress' power to establish federal enclaves is not limited to the purposes enumerated in the

17 Enclave Clause because this power is augmented by the Constitution's later-enacted eminent

18 domain provision.  *Id.* at 530.  And in such multi-purpose enclaves, as with military enclaves,

19 "[t]he jurisdiction … is exclusively in the United States" except as specifically reserved by the

20 state's cession laws.  *Id.*; *see also* Cal. Gov. Code § 110 (California cannot exercise jurisdiction

21 over federal enclaves except as provided for in cession laws).

22     Here, California "surrendered every possible claim of right to exercise legislative authority

23 within the Presidio" (*Standard Oil Co.*, 291 U.S. at 244), reserving only "the right to serve … all

24 _____

25 [3]    U.S. Const., art. I, § 8, cl. 17 ("Authority over places purchased or ceded.  To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square)

26 as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the

27 Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings").

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1  civil [and criminal] process not incompatible with this cession" (Act of March 2, 1897, St. Cal.

2  1897, p. 51, RJN, Ex. "B").  "The area thus became a federal territory removed from the

3  jurisdiction of the state." *Consolidated Milk Producers*, 19 Cal.2d at 816.  California's cession

4  laws further provide that any "retrocession of authority" must be requested by the Federal

5  Government "in writing" and approved by the California State Lands Commission.  Cal. Gov.

6  Code § 113.  No such retrocession has been requested by the Federal Government, nor has it been

7  approved by the Lands Commission.  Thus, under California's terms of cession, the Presidio

8  remains "a federal territory removed from the jurisdiction of the state." *Consolidated Milk*

9  *Producers*, 19 Cal.2d at 816.

10           b.       The Transfer of the Presidio to the Department of the Interior
                     Does Not Invalidate the Federal Government's Exclusive
11                    Jurisdiction Over the Property

12                    (1)      *S.R.A.* and Its Progeny Are Limited to Situations
                              Where the Federal Government Has Abandoned
13                             Former Military Bases

14         Relying chiefly on *S.R.A., Inc. v. State of Minnesota*, 327 U.S. 558 (1946), *Palmer v.*

15  *Barrett*, 162 U.S. 399 (1896), and *United States v. Goings*, 504 F.2d 809 (8th Cir. 1974), Landlord

16  argues that under the terms of cession, Congress' decision to transfer jurisdiction over the Presidio

17  from the Department of Defense terminates the Federal Government's "exclusive jurisdiction"

18  over the property.  (Remand Motion at pp. 8-10.)  This assertion lacks merit for multiple reasons.

19         The cases upon which Landlord relies are inapposite because they all involve situations

20  where the Federal Government ceased operations on the disputed properties, the properties were

21  conveyed to "private enterprise[s]," and "no continuing federal involvement in the lands [wa]s

22  maintained."  *Goings*, 504 F.2d 812; *accord S.R.A.*, 327 U.S. at 563-64 (site of former Post Office

23  sold to private enterprise and all federal police-power ceased); *Palmer*, 162 U.S. at 403 ("the land

24  in question … [a former Navy Hospital] was clearly no longer used by the United States" and was

25  left to be "patrolled and policed by … city authorities").

26         Simply put, the cases upon which Landlord relies are premised upon a narrowly construed

27  rule intended to prevent a hiatus of government in abandoned former federal enclaves.  As the

28  Supreme Court explained in *S.R.A.*, reversion is necessary in such cases to prevent *abandoned*

1  properties from devolving into lawless Hobbsian states of nature: If sovereignty did not "revert" to

2  the State in these cases, the nation "would [be] le[ft] with numerous isolated islands of federal

3  jurisdiction." *S.R.A.,* , 327 U.S. at 563-64.

4          The rule is very different where, as here, the Federal Government continues to actively

5  administer a former military base.  In fact, the Supreme Court unanimously rejected Landlord's

6  very argument in *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369 (1964).  *Humble* involved

7  property ceded by Louisiana to the Federal Government under the Enclave Clause for the

8  construction of an Air Force base.[4]  The Federal Government later subdivided a portion of the

9  property and constructed an oil and gas pipeline.  *Id*. at 372.  Citing the same line of cases upon

10  which Landlord relies, Louisiana contended that the Federal Government forfeited its "exclusive

11  jurisdiction" over the subdivided portion of the property when it ceased to use that portion of the

12  property for military purposes.  *Id*.  The Supreme Court unanimously rejected this argument.

13  Expressly distinguishing *S.R.A.* and its progeny, the Court held that the Federal Government

14  retains exclusive authority over converted military property so long as "the Government continues

15  to hold all the land subject to its primary jurisdiction and control."  *Id*. at 372-73.  Here, like

16  *Humble*, and unlike *S.R.A.*, the Federal Government plainly "continues to hold" the entire Presidio

17  "subject to its primary jurisdiction and control."

18                    (2)      The Federal Government "Continues to Hold" the
                              Entire Presidio "Subject to Its Primary Jurisdiction
19                            and Control"

20          As explained above, the Presidio "in its entirety" falls under the jurisdiction of the National

21  Park Service, a subdivision of the Department of the Interior.  Presidio Act, 115 Stat. 1328

22  § 101(4); 16 U.S.C. § 460bb; 16 U.S.C. § 1.  Law enforcement on the Presidio is provided by the

23  Park Service Police.  Presidio Act, 115 Stat. 1328 § 104(i).  And the Presidio is managed by the

24  Presidio Trust.  Presidio Act, 115 Stat. 1328 § 103.  Far from being a "solely private California

25  ─────────────────────
   [4]      The Louisiana cession act, nearly identical to the California cession statute, provided that
26  the United States should have "the right of exclusive jurisdiction over any land it purchased or
   condemned, or otherwise acquired … for all purposes, except the administration of the criminal
27  laws … and the service of civil process of said State therein…."  *Humble Pipe Line*, 376 U.S. at
   371.
28

part[y]" as Landlord claims (Remand Motion at p. 12:16-17), the Trust is actually "a wholly-owned corporation of the United States of America" (Presidio Act, 115 Stat. 1328 § 103(a)), created by federal statute (*id.*), and is constituted as an Executive administrative agency (5 U.S.C. § 105).  In fact, federal law expressly provides that "[e]ngaging … in any business in the area administered by the Presidio Trust, except in accordance with the provisions of a permit, contract, or other written agreement ***with the United States***, is prohibited."  36 C.F.R. § 1005.3 (emphasis added).

Moreover, the Department of the Interior has codified more than one hundred regulations governing the panoply of activities on the Presidio.  *See* 36 C.F.R. Chapter X.  When read with the multitude of other federal statutes and regulations generically applying to all National Park Service property, these laws, which constitute an entire chapter in the Code of Federal Regulations, govern every aspect of daily life.  Examples include laws addressing everything from hitchhiking (36 C.F.R. § 1004.31), to employment discrimination (36 C.F.R. § 1005.8), to the removal of pet waste (36 C.F.R. § 1002.15(a)(5)), to commercial photography (36 C.F.R. § 1005.5), to gambling (36 C.F.R. § 1002.36), to possession of open containers (36 C.F.R. § 1004.14) and drunk driving (36 C.F.R. § 1004.23).  In fact, ***the ability to lease apartment units on the Presidio is provided by federal law***.  36 C.F.R. § 1002.61.  If California law were applicable on the Presidio, there would have been no need for the Federal Government to promulgate laws to regulate such mundane activities.

This detailed regulatory regime plainly demonstrates that the Federal Government "continues to hold" the entire Presidio "subject to its primary jurisdiction and control."  In fact, the Department of the Interior specifically promulgated a regulation providing that:

> Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within the boundaries of the area administered by the Presidio Trust are governed by State law.  State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

36 C.F.R. § 1004.2.  If transfer of administrative authority to the Presidio Trust had reinvested any jurisdiction over the Presidio to California, it would have been unnecessary for the Federal Government to promulgate a regulation incorporating a specific state law into federal law by

1   reference.  This specific incorporation demonstrates that any unincorporated provisions of state

2   law are inapplicable on the Presidio.  It is a well settled rule of interpretation that where a statute

3   or regulation "explicitly enumerates certain exceptions ... additional exceptions are not to be

4   implied." *United States v. Smith*, 499 U.S. 160, 167 (1991); *accord United States v. Vonn*, 535

5   U.S. 55, 65 (2002) (when the items in one part of statute or regulation are listed in an "associated

6   group or series," it is inferred that when an item is not mentioned elsewhere in the law, that the

7   exclusion was a deliberate choice).

8         In fact, Landlord has already admitted the Federal Government's exclusive jurisdiction

9   over the Presidio.  Landlord's 2002 complaint asserted that Presidio eviction actions are

10              exempt from the San Francisco Administrative Code Chapter 37,
                enacted in 1979, and amended thereafter, in that the San Francisco
11              Residential Rent Stabilization and Arbitration Board lacks
                jurisdiction over a residential tenancy where the situs of said
12              tenancy, even though geographically within the boundaries of the
                City and County of San Francisco, is on the federally owned land of
13              the Presidio Trust.

14  2002 Comp. ¶20, RJN, Ex. "A".  Landlord conveniently omitted this allegation from its current

15  Complaint, but the notice to quit served on Mr. Kemp in this case asserts that "the property is not

16  subject to the San Francisco Rent Ordinance."  RJN, Ex. "L," at p. 2.  The plain purpose of these

17  disclaimers is to use the exclusive federal jurisdiction over the Presidio as a shield to avoid local

18  laws that Landlord dislikes.  At the same time, by its Motion, Landlord asserts that it is subject to

19  what it regards as more desirable local laws.  Such hypocrisy should not be countenanced.

20        The Presidio is far from an "isolated island[] of federal jurisdiction."  It is fully policed and

21  regulated by the National Park Service.  The Federal Government has neither abandoned the

22  Presidio, nor transferred it to a private enterprise.  The Presidio remains as intrinsically federal as

23  this Court.  If civil jurisdiction over the Presidio has been returned to California, it is evident that

24  no one has bothered to tell the Federal Government about it.

25

26

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1                      (3)      California Law Provides that "Retrocession of Jurisdiction" Must Be Made by the Federal Government in Writing and Approved by the State Lands Commission

2

3

4        Even if the Constitution permitted retrocession of authority in this case, Landlord's

5 reversion argument plainly fails under California law.  As noted above, the California Government

6 Code limits "retrocession of jurisdiction by the United States" to California over federal property.

7 Cal. Gov. Code § 113.  Section 113 expressly requires that such retrocession, whether it "return[s]

8 all jurisdiction to the state" or "***provide[s] for concurrent jurisdiction***," must be requested by the

9 Federal Government "***in writing***."  Cal. Gov. Code § 113(a) (emphasis added).  Such a request

10 must be made by an officer of the United States specifically "empowered by a United States statute

11 to cede jurisdiction" or "by the act of Congress."  *Id*.  Further, such retrocession must be approved

12 by the California State Lands Commission following a full public hearing "determin[ing] whether

13 acceptance of the retrocession is in the best interest of the state."  Cal. Gov. Code § 113(b).

14        Here, the Federal Government has neither requested nor has the State Lands Commission

15 approved such a retrocession of jurisdiction.  In fact, such a request would be irreconcilable with

16 the extensive regulatory authority the Federal Government continues to exercise over the Presidio.

17 Accordingly, Landlord's reversion argument plainly fails under California law.

18                 c.      <u>If Landlord's Position Were Accepted, Both the Presidio Trust and Landlord Would Be Legally Extinguished</u>

19

20        The Presidio Trust — and by extension Landlord — was created by a federal statute which

21 was premised upon the continued validity of the Federal Government's exclusive jurisdiction over

22 the Presidio.  Presidio Act, 115 Stat. 1328 § 103.  If Landlord's "reversion" argument were correct,

23 this statute would be invalid and the Trust — and Landlord — would cease to exist.  Thus,

24 Landlord owes its very existence to the validity of continued exclusive federal jurisdiction over the

25 Presidio.  The Court should reject Landlord's suicidal position.

26

27

28

d.   Even If the Presidio Trust Were a "Private Party," It Still
Would Be Treated as an Agent of the Federal Government

As this Court has held, the federal law applicable to evictions from federal property is a codification of Due Process rights guaranteed by the Constitution.  (*Swords to Plowshares*, 294 F. Supp.2d at 1071-73.)  It is settled law that where, as here, "the Government creates a corporation by special law, for the furtherance of governmental objectives" (*Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 400 (1995)) such corporations are "agenc[ies] or instrumentalit[ies] of the United States for the purpose of individual rights guaranteed against the Government by the Constitution" (*id*. at 394).  Thus, the Government could not avert a federal tenant's constitutional rights through the simple expediency of transferring administrative authority to the Presidio Trust.

## C.   CALIFORNIA COURTS LACK JURISDICTION TO ENFORCE AN EVICTION ORDER

Federal law dictates that the National Park Police are exclusively responsible for law enforcement on the Presidio.  Presidio Act, 115 Stat. 1328 § 104(i).  For this reason, the San Francisco County Sheriff lacks the jurisdiction to enforce Presidio eviction orders.  *See e.g.*, *In re Neagle*, 135 U.S. 1, 62 (1890) (state police officers cannot interfere with jurisdiction of federal police officers).  Accordingly, California's courts have no means of enforcing any judgment in Presidio unlawful-detainer cases.  Thus, Landlord's argument actually asserts that *exclusive* jurisdiction over Presidio evictions resides in courts which have no jurisdiction to enforce eviction orders on the Presidio.  Thus, at best, if Landlord obtained an eviction order in state court, Landlord would have to return to this Court to enforce the order.  It defies logic to assert that this Court lacks jurisdiction to hear this action *now*, but will possess jurisdiction to enforce a judgment in this action *later*.

Moreover, even if subject-matter jurisdiction were as fickle as Landlord's argument suggests, this Court may be constitutionally barred from enforcing a state-court eviction order because California's state courts lack jurisdiction over the *property* in question.  The issue turns

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1   upon whether unlawful-detainer actions, which by their nature seek possession of real property,

2   arise under a court's *in rem* jurisdiction, or *in personam* jurisdiction.

3       Judgments premised upon *in personam* jurisdiction simply "impose[] a personal liability or

4   obligation on one person in favor of another, " and thus only require personal jurisdiction over the

5   parties.  *Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) (citations omitted).  Conversely,

6   judgments requiring *in rem* jurisdiction are constitutionally quite different: "

7
8   > Founded on physical power, … the *in rem* jurisdiction of a state
   > court is limited by the extent of its power and by the coordinate
   > authority of [other jurisdictions].  The basis of the jurisdiction is the
   > presence of the subject property within the territorial jurisdiction of
9   > the forum State.

10  *Id*. at 246 (citations omitted).

11      Traditionally, actions seeking title or possession of real property were regarded as strictly

12  *in rem* or *quasi in rem*.  *American Land Co. v. Zeiss*, 219 U.S. 47 (1911) (Syllabus).  Thus,

13  regardless of jurisdiction over the parties, courts were required to possess jurisdiction over the

14  property in order to issue constitutionally binding orders concerning title or possession of such

15  property.  *Fall v. Eastin*, 215 U.S. 1, 11 (1909).

16      A split of authority exists concerning whether unlawful-detainer actions are *in rem* or

17  *in personam* proceedings.[5]  *Compare Neagle v. Brooks*, 373 F.2d 40, 43 (10th Cir. 1967) (eviction

18  actions are *in rem* requiring jurisdiction over the property as well as the parties) *with Staffan v.*

19  *Zeust*, 10 App. D.C. 260, 271 (D.C. 1897) (eviction actions are *in personam* requiring jurisdiction

20  over the parties).  Depending upon the ultimate resolution of this dispute, it is possible that a state-

21  court issued Presidio eviction order will be unenforceable in federal court.  Thus, federal courts not

22  only possess jurisdiction to hear Presidio evictions — that jurisdiction may, in fact, be *exclusive*.

23  _____

24  [5]      In his brief to the Committee, which he provided in his personal capacity, Mr. Ryan argued
that it is likely that unlawful-detainer actions are *in personam*, supporting limited concurrent

25  jurisdiction permitting state court eviction actions, while still requiring federal action for them to
be enforced.  RJN, Ex. "I," at pp. 13-17.  On the other hand, Mr. Ryan also contended that all

26  Presidio evictions arise under federal law and are subject to removal to federal court.  *Id*. at pp. 2-
4, 13 n.10.  The Presidio Trust, however, pointed out that federal courts are currently divided over

27  whether unlawful-detainer actions are *in rem* or *in personam*; thus, according to it, this Court's

28  jurisdiction may be exclusive.  RJN, Ex. "K" at p. 7.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1    **D.     ANY ACTIONS SEEKING EVICTION FROM FEDERALLY SUBSIDIZED**
     **HOUSING "ARISE UNDER" FEDERAL LAW**

2

3          Mr. Kemp's final ground for federal subject-matter jurisdiction raises an important issue of

4    first impression: Whether Housing and Urban Development regulations create a federal question

5    by preempting state eviction laws.

6          "If a federal cause of action completely pre-empts a state cause of action any complaint

7    that comes within the scope of the federal cause of action necessarily 'arises under' federal law"

8    and is subject to removal irrespective of the well-pleaded complaint rule. *Franchise Tax Bd. v.*

9    *Construction Laborers Vacation Trust*, 463 U.S. 1, 24 (1983).  This is the case here.

10         Landlord operates a federally subsidized housing complex.  2002 Comp. ¶8, RJN, Ex. "A".

11   The federal Department of Housing and Urban Development, acting on express authorization from

12   Congress, has promulgated regulations that explicitly govern all evictions from federally

13   subsidized housing.  *See e.g.*, 42 U.S.C. § 1437.  This federal law specifically enumerates — and

14   limits — the grounds for which a federally subsidized landlord can evict a tenant.  24 C.F.R.

15   § 247.3.  Indeed, these regulations provide that "[n]o termination shall be valid unless it is in

16   accordance with the [federal] provisions…."  24 C.F.R. § 247.3(a)(4).  Federal law also

17   specifically dictates the manner in which an eviction notice must be served (24 C.F.R. § 247.4)

18   and provides for a heightened level of specificity in these notices (*id.*; *Swords to Plowshares*,

19   294 F. Supp.2d at 1072-73).  Some of these requirements — particularly the exacting federal

20   notice requirements — are not specifically provided for in California's counterpart statute.  *See*

21   Cal. Code Civ. Proc. § 1161(2) (2001).

22         The federal provisions also incorporate be reference additional non-conflicting

23   supplemental state-law provisions (24 C.F.R. § 247.6(a)) and state-law provisions which afford

24   greater protection to tenants than those provided by federal law (24 C.F.R. § 247.6(c)).  Thus,

25   because any action seeking to evict a tenant from federally subsidized housing "must comply with

26   the applicable federal regulations" (*Swords to Plowshares*, 294 F. Supp.2d at 1070) "any

27   complaint that comes within the scope of [a federal eviction action] necessarily 'arises under'

28   federal law" (*Franchise Tax Bd.*, 463 U.S. at 24).  "[A]ny civil action brought in a State court of

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1  which the district courts of the United States have original jurisdiction, may be removed by the

2  defendant….” *Franchise Tax Bd.*, 463 U.S. at 8.  Accordingly, Landlord's action is removable.

3       Landlord opposes this argument by chiefly relying upon an unpublished order asserting

4  that the federal provisions governing evictions from federal housing are merely "incidental" to

5  state law.  *Las Casitas Associates v. Ramirez*, 1994 WL 618491, *2 (N.D. Cal. Oct. 25, 1994).

6  With due respect to the *Las Casitas* court, this Court specifically found in *Swords to Plowshares*

7  that federal law imposes the governing material requirements for eviction from federal housing.

8  Indeed, the Court found that a complaint is subject to dismissal if it does not specifically plead the

9  manner of compliance with the notice provisions of federal law.  *Swords to Plowshares*,

10  294 F. Supp.2d at1070-71.  Such requirements cannot be dismissed as merely "incidental."

11  Indeed, these regulations are especially material here because, as explained above, the assimilated

12  state law contains no nuisance provision.  Cal. Code Civ. Proc. § 1161 (1872) & (1876), RJN, Ex.

13  "C".  Thus, Landlord's claim necessarily "arises under" federal law because it hinges upon the

14  federal nuisance provision.  24 C.F.R. § 247.3(c)(2)(ii).

15       The fact that federal law incorporates by reference substantial components of state law is

16  also of no moment for two reasons.  First, the "state law" incorporated by reference here is the

17  "assimilated state law" in effect when the Federal Government acquired the Presidio.  (*Macomber*,

18  401 F.2d at 456)  As explained above, such law is actually "federal law" supporting federal

19  question jurisdiction.  (*Id*.)

20       Second, when federal law "'expressly adopts state law, the state [law] become[s], in effect,

21  federal law for the purposes of federal question jurisdiction.'"  *Rahl v. Bande*, 316 B.R. 127, 136-

22  37 (S.D.N.Y. bankr. 2004), quoting 13B Wright & Miller, Federal Practice & Proc., Civ.2d § 3563

23  at 56-57 (1984); *accord Students of California School for the Blind v. Honig*, 736 F.2d 538

24  (9th Cir. 1984), *vacated on other grounds*, 471 U.S. 148 (1985) (per curiam).

25       The Ninth Circuit's opinion in *Honig* well illustrates the "federalized state law" principle.

26  There, the plaintiffs brought an action against the State of California under the federal Education

27  for All Handicapped Children Act (20 U.S.C. § 1401) claiming the State violated the Act by

28  constructing a school for the blind in a seismically unstable location.  *Honig*, 736 F.2d at 540-41.

1   The court noted that "[federal] subject matter jurisdiction hinge[d] on whether [the statute] can be

2   interpreted to regulate seismic safety for schools for the handicapped … *by the adoption of state*

3   *law*." *Honig*, 736 F.2d at 544 (emphasis added).  The federal statute required participating states

4   to provide "free appropriate public education" to the disabled but said nothing about seismic

5   safety.  Nonetheless, the Ninth Circuit found federal-question jurisdiction existed: "[The federal

6   statute] provides that a free appropriate public education is one that 'meet[s] the standards of the

7   State educational agency.'  [The federal statute] thus incorporates state educational standards." *Id*.

8   at 545.  Because "California law requires seismic safety of schools" the seismic requirements were

9   assimilated into federal law and satisfied the requirements of federal question jurisdiction.  *Id*.

10  Thus, as the Third Circuit, following *Honig*, succinctly stated, "[b]y [its] catchall provision, [the

11  All Handicapped Children Act]," like the federal housing regulations at issue here, "*incorporates*

12  *any state standards that go beyond the minimum standards of the Act, and thereby confers on*

13  *the federal courts authority to enforce such standards under their 'federal question'*

14  *jurisdiction*, 28 U.S.C. § 1331." *Geis v. Board of Educ.*, 774 F.2d 575, 581 (3d Cir. 1985)

15  (emphasis added).

16      The *Honig* principle is supported by the Supreme Court's oft-cited opinion in *Merrell Dow*

17  *Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986).  *Merrell Dow* involved an Ohio cause of

18  action, which incorporated by reference a regulation promulgated by the federal Food and Drug

19  Administration.  *Id*. at 805.  There, despite the regulation's federal genesis, the Court found that no

20  federal question existed because, among other things, the federally created standard, having been

21  assimilated into state law, did not "arise under" federal law.  *Id*. at 811-12.  If federal law, when

22  assimilated into state law, becomes state law for jurisdictional purposes, the converse must be true:

23  When state law is assimilated into federal law, it must, as the *Honig* court found, become federal

24  law for jurisdictional purposes.  This case is no different.

25                    **IV.    CONCLUSION**

26      Absent the live cannons, the Presidio remains every bit as much an independent federal

27  enclave today as it was at the end of the nineteenth century.  For this reason, state "laws affecting

28  the possession, use and transfer of property" (*McGlinn*, 114 U.S. at 546-47) in effect at the of its

1  cession "continue in force as federal laws" (*James Stewart & Co.*, 309 U.S. at 96).  Because "such

2  assimilated law[s], arise under federal law" application of these property laws "are properly the

3  subject of federal jurisdiction."  *Macomber*, 401 F.2d at 456.  In fact, Landlord actually owes its

4  very existence to the Federal Government's continued enclave jurisdiction over the Presidio.

5  Thus, contrary to Landlord's assertion, this case is far from a simple state-law dispute "involving

6  solely private California parties."  Remand Motion at p. 12:11-14.  Consequently, Landlord's

7  meritless motion should be swiftly denied.

8  Dated: June 7, 2005                                      Respectfully submitted,

9                                                              THELEN REID & PRIEST LLP
                                                                ROBERT A. WEIKERT
10                                                             PATRICK M. RYAN
                                                                CHAD DEVEAUX
11                                                             EVA CHAN

12

13  By _____/s/ Chad DeVeaux_____
                                                                CHAD DEVEAUX
14                                                             Attorneys for Defendant,
                                                                ROBERT KEMP

15

16

17

18

19

20

21

22

23

24

25

26

27

28