United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWORDS TO PLOWSHARES,<br><br>    Plaintiff,<br><br> v.<br><br>ROBERT KEMP,<br><br>    Defendant.<br>_____/ | No. C 05-1661 MJJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

## INTRODUCTION

Before the Court is Plaintiff Sword to Plowshares' motion to remand this action to state court. For the following reasons, the Court **DENIES** Plaintiff's motion to remand.

## FACTUAL BACKGROUND

Plaintiff is a California not-for-profit corporation. Plaintiff leases land from The Presidio Trust ("the Trust"), including the premises located at 1030 Girard Road, #219A, San Francisco, California ("the unit"). Plaintiff subleased the unit to Defendant Robert Kemp, a California resident on November 15, 2000.[1] The unit is part of a development called the Veterans Academy, which is operated by Plaintiff.

Plaintiff filed its action for unlawful detainer against Defendant on April 1, 2005, in San Francisco Superior Court. The action was based on a 60 Day Notice to Terminate Tenancy which

---

[1] The Trust is not a party to the action, which precludes the issue of diversity jurisdiction, or the issue of jurisdiction over a government owned corporation.

asserted that Defendant breached the Lease in several respects.[2] On or about April 11, 2005, Defendant served a verified Answer, demanded a jury trial, and requested that a settlement conference be set by the state court. On April 20, 2005, the state court action was set for trial. Defendant served his notice of removal on April 21, 2005.

The unit that is the subject of the unlawful detainer is located within the boundaries of the Presidio. Jurisdiction over the Presidio was ceded to the federal government by the California Legislature in 1897 for the use of a military base. Cal. Stat. 1897, p. 51.[3] The Army ceased using the Presidio in 1994, and in 1996 Congress passed the Presidio Trust Act, transferring administrative jurisdiction over the land to The Presidio Trust. 16 U.S.C. § 460bb App., Pub.L. 104-33, Title I, § 103.

Plaintiff moves to remand this action to state court, asserting two jurisdictional defects. First, Plaintiff asserts that unlawful detainer actions are not subject to removal. Second, Plaintiff claims that the Court lacks subject matter jurisdiction over this action because the complaint does not assert any causes of action involving a federal question.

**LEGAL STANDARD**

**A.     Removal**

As a general rule, an action is removable to federal court only if it might have been brought there originally. 28 U.S.C. § 1441(a). The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 565 (9th Cir. 1992). The defendant bears the burden of proving the propriety of removal. *Duncan*, 76 F.3d at 1485. The removal statute is strictly construed against removal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

**B.     Subject Matter Jurisdiction**

Federal courts have original jurisdiction of all civil actions arising under the Constitution,

---

[2] Upon Defendant's unopposed request for judicial notice, the Court hereby judicially notices the 60 Day Notice to Terminate Tenancy, according to Federal Rule of Evidence 201(b).

[3] Upon Defendant's unopposed request for judicial notice, the Court hereby judicially notices Cal. Stat. 1897, p. 51, according to Federal Rule of Evidence 201(b).

laws, or treaties of the United States.  28 U.S.C. § 1331.  An action "arises under" federal law within the meaning of § 1331 if either: (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.  *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997) (citing *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).  A state-law claim may be treated as one "arising under" federal law only where the vindication of the state-law right necessarily turns on some construction of federal law.  *Franchise Tax Board*, 463 U.S. at 9.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "A defense is not part of a plaintiff's properly pleaded statement of his or her claim."  *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  28 U.S.C. § 1447(c).

## ANALYSIS

### A.   The Presidio is a Federal Enclave

Defendant argues that the Presidio is a federal enclave, and is therefore subject to the exclusive jurisdiction of the United States.  Plaintiff asserts that exclusive federal jurisdiction over the Presidio was terminated when the Army evacuated the base and the Secretary of the Interior transferred administrative jurisdiction of the Presidio to The Presidio Trust.  Under the Constitution, the United States has the power to acquire land from the states for certain specified uses and to exercise exclusive jurisdiction over such lands, which are known as federal enclaves.  *Lord v. Local Union No. 2088, Int'l Bhd. of Elec. Workers*, 646 F.2d 1057, 1059 (5th Cir. 1981).  Article I, Section 8, Clause 17 of the United States Constitution grants Congress the power to "exercise exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."  The power to exercise "exclusive legislation" holds the same meaning as "exclusive jurisdiction."  *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).  Exclusive jurisdiction "assumes the absence of any interference with the exercise of the functions of the Federal Government and . . . debar[s] the State

3

from exercising any legislative authority, including its taxing and police power, in relation to the property and activities of individuals and corporations within the territory." *Silas Mason Co. v. Tax Comm'n of Wash.*, 302 U.S. 186, 197 (1937). The United States Supreme Court noted that:

> Exclusive legislative power is in essence complete sovereignty. That is, not only is the federal property immune from taxation because of the supremacy of the Federal Government but state laws, not adopted directly or impliedly by the United States, are ineffective to tax or regulate other property or persons upon that enclave.

*S. R. A., Inc. v. Minnesota*, 327 U.S. 558, 562-63 (1946) (footnote omitted). Therefore, federal enclaves are under the exclusive jurisdiction of the United States, meaning the property and activities of individuals and corporations within that territory are also under federal jurisdiction.

The California Legislature "cede[d] to the United States of America exclusive jurisdiction" over the Presidio by statute in 1897. Cal. Stat. 1897, p. 51. It is not contested by the parties and case law supports that, when California ceded the Presidio to the United States, exclusive jurisdiction over that area was conferred upon the United States. *Standard Oil Co. v. Cal.*, 291 U.S. 242, 244 (1934).

While Plaintiff essentially concedes that the Presidio was a federal enclave in 1897, Plaintiff asserts that the Presidio lost such status when it was conveyed to the Trust in 1996. Plaintiff's argument lacks merit.

The California Act conferring jurisdiction states:

> The State of California hereby cedes to the United States of America exclusive jurisdiction over all lands within this State now held, occupied, or reserved by the government of the United States for military purposes or defense, or which may hereafter be ceded or conveyed to said United States for such purposes . . . .

Cal. Stat. 1897, p. 51. The Act also reserves to the State the right to serve and execute civil and limited criminal process. *Id.* Regarding retrocession of jurisdiction, the California Legislature, through California Government Code Section 113,[4] "consents to the retrocession of jurisdiction by the United States of land within th[e] state upon and subject to each and all of the following express conditions:" a) the United States must request acceptance of retrocession in writing; b) the State

---

[4] Upon Defendant's unopposed request for judicial notice, the Court hereby judicially notices Cal. Gov. Code § 113, according to Federal Rule of Evidence 201(b).

4

1    Lands Commission shall hold a hearing to determine whether acceptance of the retrocession
2 is in the best interest of the state; and c) certified copies of the Commissions orders or resolutions
3 must be recorded in the office of the county recorder. Cal. Gov. Code § 113. Here, Plaintiff has
4 offered no evidence that any of these three requirements have been met. Therefore, the Court finds
5 that California never reacquired jurisdiction of the Presidio from the United States.

6    Plaintiff alternatively argues that because the cession clause included the statement "for
7 military purposes," jurisdiction ended when the Presidio was no longer used for military purposes.
8 The Court disagrees. In *Humble Pipe Line Co. v. Waggonner*, the United States acquired a fee
9 simple title to a tract of land in 1930 by donations from the State of Louisiana, for the purpose of
10 using the land as a military base. 376 U.S. 369, 369-71 (1964). The authorizing statue contained no
11 conditions and reservations save the administration of the criminal laws and the service of civil
12 process. *Id*. at 371 n.3. The United States then leased the right to exploit parts of the reservation for
13 oil and gas. *Id*. at 372. The *Humble* court distinguished cases where the government had sold the
14 land to a private party, stating, "here the Government continues to hold all the land subject to its
15 primary jurisdiction and control." *Id.* at 372-73. The Court also noted previous decisions finding
16 that exclusive jurisdiction is not lost by lease of property for commercial purposes within an enclave,
17 by conveying a right of way to a railroad across a reservation, nor by part of a reservation being used
18 for farming. *Id*. at 373-74. The Court in *Humble* held that the United States Government did not
19 lose exclusive jurisdiction over the land by leasing it. *Id*.

20    The Court finds the reasoning in *Humble* to be persuasive as applied to the instant case.
21 Accordingly, the Court finds that the United States did not lose exclusive jurisdiction over the
22 Presidio by conveying administrative jurisdiction to The Presidio Trust.[5] Plaintiff's attempt to
23 interpret the cession clause language "for military purposes" as a condition subsequent to the
24 transfer of jurisdiction is not supported by case law. In *Collins v. Yosemite Park & Curry Co.*, when
25 faced with interpreting cession clause language reserving to a state the right to tax, the United States
26 Supreme Court chose a broad interpretation. 304 U.S. 518 (1938). The *Collins* court stated that the

---

28    [5]*See also Volk v. U.S.*, 57 F. Supp. 2d 888 (N.D. Cal. 1999) (accepting testimony that the Presidio was under federal jurisdiction, and stating the court would have taken judicial notice of that fact had the government failed to establish that the Presidio is under federal jurisdiction).

5

cession Acts should be construed as declarations of the agreements reached between States and the National Government. *Id*. at 528. "These arrangements the courts will recognize and respect." *Id*. In overturning the lower court's strict interpretation of the cession clause, the Supreme Court stated, "[a]s the respective acts of State and Nation were in the nature of a mutual declaration of rights, this is not an occasion for strict construction of a grant by a State limiting its taxing power." *Id*. at 532. Here, because the agreement ceding jurisdiction from California to the United States was a mutual arrangement, the cession clause should not be construed so narrowly as to usurp jurisdiction from the United States, breaking a status quo that it appears both parties to the cession wish to keep. There is no indication that either California or the United States intended the language "for military purposes" to be a condition subsequent that would automatically and immediately transfer jurisdiction from the United States back to California at the moment the Presidio ceased to be used "for military purposes." Therefore, the Court finds that the language, "for military purposes," is not a condition subsequent to the cession of jurisdiction from California to the United States.

While Plaintiff cites *Fort Leavenworth R.R. Co. v. Lowe* in support of the theory that jurisdiction ended when the administrative jurisdiction was transferred to the Presidio Trust, an examination of *Ft. Leavenworth* reveals that the lands in that case were ceded *without* the consent of the legislature (and therefore not arising under Clause 17), and were therefore not a cession "of exclusive legislative authority over the land, except so far as that may be necessary for its use as a military post." 114 U.S. 525, 542 (1885). Accordingly, the Court declines to find *Ft. Leavenworth* controlling.

Similarly, in *Palmer v. Barrett*, the state ceded land "for the uses and purposes of a navy yard and naval hospital," and expressly conditioned the cession with the words "the United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded, and no longer." 162 U.S. 399, 403 (1896). In addition, the land in *Palmer* was found to be purchased *without* the consent of the state, and had been leased to the city of Brooklyn. Here, in contrast to *Ft. Leavenworth* and *Palmer*, the Presidio was ceded with the consent of the legislature, and therefore falls under Clause 17 of the Constitution. Furthermore, California ceded the Presidio to the United States with no specific condition that jurisdiction would remain

only so long as the land was used for the purposes for which jurisdiction was ceded.

The Court finds no reason to interpret the fact that California ceded the land "for military purposes or defense" to mean that jurisdiction would remain *only* until the land ceased to be used for military purposes. There is no such restriction in the cession statute. The United States never retroceded jurisdiction of the Presidio, and California never accepted retrocession of jurisdiction. The fact that the United States leases the Presidio for commercial purposes does not change this result. *Humble*, 376 U.S. at 373.

Therefore, because California did not include a condition reverting jurisdiction of the Presidio back to the State, and because the California Legislature created a specific Government Code conditioning retrocession of jurisdiction, the Court finds that jurisdiction never reverted back to the state of California, and continues to lie with the United States Government.

**B.      Unlawful Detainer Actions**

Plaintiff asserts that the regardless of the fact that the Presidio is federally owned land, the present case is not subject to removal because it is an unlawful detainer between private parties, and therefore arises under state law. Defendant argues that "federalized" state law governs the possession, use and transfer of property in federal enclaves, creating a federal question.

**1.      Removal of Unlawful Detainer Actions in General**

Plaintiff asserts that unlawful detainer actions are not subject to federal jurisdiction and if removed, must be remanded. The Court disagrees. Numerous cases support the finding that unlawful detainers are subject to removal.[6] The determining factor for removal of unlawful detainers is whether federal subject matter jurisdiction exists, either on the basis of diversity jurisdiction or federal question jurisdiction. As long as the components of federal subject matter jurisdiction are present, an unlawful detainer action may be removed to federal court. *Rubel-Jones Agency, Inc. v. Jones*, 165 F. Supp. 652, 654 (W.D. Mo. 1958). Accordingly, the Court declines to find that unlawful detainers, as a matter of law, are not removable to federal court.

---

[6]*See Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F. Supp. 281 (S.D. Ala. 1989) (denying remand of an unlawful detainer removed for diversity jurisdiction); *Katz v. Herschel MFG. Co.*, 150 F. 684 (C.C.D. Neb. 1906) (denying remand of an unlawful detainer removed for diversity jurisdiction).

7

**2. Unlawful Detainers Between Private Parties in a Federal Enclave**

Plaintiff asserts that actions involving lease rights between private parties on federal land do not present a federal question and arise under state contract rights. Plaintiff relies on *Round Valley Indian Housing Authority v. Hunter,* in which the court addressed a subleasing arrangement on tribal trust land belonging to the Coyote Valley Band of Pomo Indians. 907 F. Supp. 1343 (N.D. Cal. 1995). The tribe entered into a master lease with Round Valley Indian Housing Authority ("RVIHA") to build housing and lease it to tribe members. *Id.* RIVHA subleased a unit to the defendant, a member of the tribe, who failed to pay rent. *Id.* RIVHA brought an action in federal court seeking to evict the defendant, and the *Round Valley* court remanded the action to state court for lack of federal subject matter jurisdiction. *Id.*

While the facts of *Round Valley* are similar, there is one major distinction: federally owned Indian lands are not subject to exclusive federal jurisdiction. Exclusive jurisdiction in federal enclaves has been interpreted to specifically convey federal jurisdiction in relation to the property and activities of individuals and corporations within the territory. *Silas Mason Co. v. Tax Comm'n of Wash.*, 302 U.S. 186, 197 (1937). Jurisdiction over Indian trust lands, conversely, is split between federal and state jurisdiction. 28 U.S.C. § 1360. Under 28 U.S.C. § 1360, the states in which the Indian lands are located have jurisdiction over civil causes of action between Indians, or to which Indians are parties, which arise in Indian country. Federal jurisdiction, however, was retained for adjudication in probate proceedings or otherwise, of the ownership or right to possession of Indian lands. *Id.* at § 1360(b). Plaintiff relies solely on cases involving Indian trust lands, which involve entirely different jurisdictional limitations than federal enclaves such as the Presidio.

In addition, it is well established that when the Federal Government acquires state land to establish a federal enclave, the former state law—as it existed at the time the land was ceded—remains in effect unless the Federal Government expressly provides otherwise. *James Stewart & Co. v. Sadrakula* 309 U.S. 94, 99-100 (1940). "This assures that no area however small will be left without a developed legal system for private rights." *Id.* Furthermore, the Supreme Court has specifically explained that this rule applies to property disputes: "[w]ith respect to . . . laws affecting the possession, use and transfer of property . . . the rule is general, that a change of

8

government leaves them in force until, by direct action of the new government, they are altered or repealed." *Chicago, R.I. & P.R. Co. v. McGlinn*, 114 U.S. 542, 546-47 (1885).

This assimilated state law is distinctly federal in nature, and its application establishes the basis for federal question jurisdiction. Upon the transfer of exclusive jurisdiction of a site, from a state to the United States, the state laws in effect at the time continue in force as federal laws. *James Stewart & Co.*, 309 U.S. at 99. "Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction." *Macomber v. Bose*, 401 F.2d 545, 546 (9th Cir. 1968).

Therefore, the Court finds Plaintiff's reliance upon cases involving Indian lands to be unpersuasive, and that federal subject matter jurisdiction exists.[7]

## CONCLUSION

For the foregoing reasons, the Court finds that it has subject matter jurisdiction over this matter and **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: August__16__, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[7]Because the court finds federal jurisdiction exists, the Court declines to address the issue of jurisdiction being found under Section 8 Housing Regulations.